**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Appellee,<br><br>v.<br><br>LISA M. MONTGOMERY,<br><br>Appellant. | No. 21-1074 |

**RESPONSE IN OPPOSITION TO**
**MOTION FOR STAY OF EXECUTION**

The district court sentenced Lisa Montgomery to death more than twelve years ago. Sunday, less than 48 hours in advance of her scheduled execution later today at 5:00 p.m., Montgomery for the first time suggested—contrary to representations that she has made to both the Supreme Court and the D.C. Circuit—that her twelve-year-old judgment includes a stay that has been in place ever since it was issued. The district court correctly rejected this last-minute claim, and Montgomery cannot satisfy her heavy burden to justify a stay of her execution pending appeal. This Court should deny her motion.

## I. Background

A few days before Christmas in 2004, Montgomery attacked Bobbie Jo Stinnett, cut her premature baby from her womb with a kitchen knife, and strangled her to death. *United States v. Montgomery*, 635 F.3d 1074, 1079-80 (8th Cir. 2011). A jury convicted Montgomery of kidnapping resulting in death, and the district court sentenced her to death on April 4, 2008. *Id.* at 1080, 1085; (DCD 402).[1] After attempting to pass off the baby as her own to family and friends, including her husband, Montgomery eventually confessed to the kidnapping and gruesome murder. *Id.*

A jury convicted Montgomery of kidnapping resulting in death, and the district court sentenced her to death. *Id.* at 1080, 1085; (DCD 402). The court's final judgment provided that the Attorney General shall set the time of execution, "provided that the time shall not be sooner than 60 days nor later than 90 days after the date of the judgment." (*Id.*) But it added that, "[i]f an appeal is taken from the conviction or sentence,

[1]"DCD" refers to the docket entries in Montgomery's underlying criminal case, No. 05-6002-01-CR-SJ-GAF.



Appellate Case: 21-1074 Page: 2 Date Filed: 01/12/2021 Entry ID: 4993271

execution of the judgment shall be stayed pending further order of this Court upon receipt of the Mandate of the Court of Appeal." (*Id.*)

Montgomery timely appealed. This Court affirmed, *Montgomery*, 635 F.3d 1074, and the Supreme Court denied certiorari, *Montgomery v. United States*, 565 U.S. 1263 (2012).

Montgomery subsequently sought post-conviction relief under 28 U.S.C. § 2255. The district court denied relief and denied a certificate of appealability (COA). *See* Order, *Montgomery v. United States*, No. 12-8001 (W.D. Mo. Mar. 3, 2017); Order, *Montgomery*, No. 12-8001 (Dec. 21, 2015). This Court also denied a COA and dismissed Montgomery's appeal. Judgment, *Montgomery v. United States*, No. 17-1716 (8th Cir. Jan. 25, 2019). The Supreme Court again denied certiorari. *Montgomery v. United States,* 140 S. Ct. 2820 (2020).

On October 16, 2020, the Director of the Bureau of Prisons designated December 8, as Montgomery's execution date. (DCD 444.) On November 23, the Director rescheduled Montgomery's execution for Tuesday, January 12, 2021. (DCD 445.)

On the Sunday before her Tuesday execution, Montgomery moved her sentencing court to "enter an order confirming that its final judgment

precludes the Government from carrying out the execution as scheduled." (DCD 448.)

A day prior, the Government had provided the district court notice of an opinion from the United States District Court for the District of Columbia that discussed the judgment in this case and raised questions sua sponte as to whether a stay remained in place, even though Montgomery herself had raised no such claim. (DCD 446.) In the Government's view, the "stay in the judgment plainly was intended to permit the defendant to seek the appellate review to which she was entitled." (DCD 446.) As such, the district court's judgment expired when the court "entered its order denying the defendant's Section 2255 motion" (DCD 446), which occurred March 3, 2017. *Montgomery v. United States*, 12-cv-8001 (W.D. Mo. Mar. 3, 2017) (denying motion and certificate of appealability).

Late Sunday evening, the district court denied Montgomery's motion. "The Government is correct; in the Court's view, the stay lifted when it denied her 2255 motion. The Court had no intention to limit execution of the judgment beyond exhaustion of appeals." (DCD 451.) "For this reason and the reasons explained in the Government's Notice,"



Appellate Case: 21-1074 Page: 4 Date Filed: 01/12/2021 Entry ID: 4993271

the court denied Montgomery's motion, and to the extent it could be construed as such, her motion for a stay. (DCD 451.)

Today, just less than 24 hours before her scheduled execution, Montgomery moves this Court to stay her execution pending her appeal of the district court's order.[2]

## II. Argument and Authorities

This Court should deny Montgomery's motion to stay her execution. First, she has unreasonably delayed in bringing a claim that could have been filed years earlier and the equities otherwise favor timely carrying out her lawful sentence. Second, she has also failed to show a substantial likelihood of success on her claim that the judgment that sentenced her to death instead stays her execution indefinitely.

"[A] stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue influence from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). An

[2] Since she filed her motion for stay in this Court, two other courts have stayed Montgomery's execution: *Montgomery v. Warden*, 21-cv-20 (S.D. Ind. Jan. 11, 2021), Dkt. 17; *Montgomery v. Rosen*, 21-5001 (D.C. Cir. Jan. 11, 2011) (en banc).

inmate seeking to stay her execution must "satisfy all of the requirements for a stay," *id.*, which are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies," *Bourgeois v. Watson*, 977 F.3d 620, 629 (7th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

### *A. Montgomery Unreasonably Delayed in Seeking Relief and the Equities Favor Execution of Her Lawful Sentence*

This Court should deny Montgomery's motion to stay her execution because she unreasonably delayed her request for relief. Whatever issues Montgomery now claims to exist in the judgment have been apparent for more than twelve years, and Montgomery cannot delay her execution by waiting until just hours before to raise them.

The Supreme Court recently reiterated that "[l]ast-minute stays should be the extreme exception, not the norm." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019). Indeed, in the past several months, the Court has summarily reversed four last-minute injunctions halting federal executions. *See also Barr v. Purkey*, 140 S. Ct. 2594 (2020); *Barr v.*



Appellate Case: 21-1074 Page: 6 Date Filed: 01/12/2021 Entry ID: 4993271

*Purkey*, 141 S. Ct. 196 (2020); *Barr v. Hall*, No. 20A102, 2020 WL 6797719 (U.S. Nov. 19, 2020).

The Supreme Court's recent practice reflects established principles. A court must apply "a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Hill*, 547 U.S. at 584 (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004). The public has a "powerful and legitimate interest in punishing the guilty," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (citation omitted), and "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence," *Bucklew*, 139 S. Ct. at 1133 (quotation marks omitted). "Only with an assurance of real finality can the [government] execute its moral judgment in a case," and "[o]nly with real finality can the victims of crime move forward knowing the moral judgment will be carried out." *Calderon*, 523 U.S. at 556. Federal courts thus "can and should" reject "dilatory or speculative suits." *See Hill*, 547 U.S. at 585. "[T]he last-minute nature of an application that could have been brought earlier, or an applicant's attempt at

manipulation, may be grounds for denial of a stay." *Bucklew*, 139 S. Ct. at 1134 (quotation omitted).

This Court has repeatedly rejected as untimely requests for stays brought sooner than Montgomery's. In *McGehee v. Hutchinson*, 854 F.3d 488 (8th Cir. 2017) (en banc), this Court rejected as unreasonably delayed a stay application brought three weeks in advance of an execution because the inmates could have brought them earlier: "[T]he prisoners' use of 'piecemeal litigation' and dilatory tactics is sufficient by itself to deny a stay." *Id.* at 491 ((quoting *Hill*, 547 U.S. at 584-85)). In *Jones v. Kelley*, 854 F.3d 1009 (8th Cir. 2017), this Court rejected as unreasonably delayed a stay application brought one week before execution because the inmate could have brought it *three weeks* sooner: "[W]e refuse to allow Jones once again to delay the administration of justice through piecemeal litigation and dilatory tactics." *Id.* at 1014.

Similarly, in *Dunn v. Ray*, 139 S. Ct. 661 (2019), the Supreme Court vacated a stay entered by the Eleventh Circuit because the death-row inmate waited nearly three months after the date of execution was set to challenge a restriction on having a spiritual advisor in the execution chamber, bringing the claim ten days before his execution date. *See*



Appellate Case: 21-1074 Page: 8 Date Filed: 01/12/2021 Entry ID: 4993271

*Bucklew*, 139 S. Ct. at 1134 n.5 (explaining that *Dunn* "implicated the strong equitable presumption that no stay should be granted where a claim could have been brought as such a time as to allow consideration of the merits without requiring entry of a stay" (citation and quotation marks omitted)).

If each of those cases present unjustifiable delay, this case is beyond the pale. Montgomery could have brought this claim any time in the last twelve years. Montgomery's judgment has been unchanged since 2008. (DCD 402.) Her conviction has been final since 2012. *United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011), *cert. denied*, 565 U.S. 1263 (2012). She has never advanced this implausible interpretation of the judgment until it was suggested in a footnote in an opinion from the District Court for the District of Columbia in separate litigation.

Instead, Montgomery has used that time to file piecemeal post-exhaustion lawsuits in many other districts and circuits, bringing this claim only when efforts elsewhere faltered. *See Montgomery v. Barr*, No. 4:20-cv-1281, 2020 WL 7353711 (N.D. Tex. Dec. 15, 2020) (dismissing under 28 U.S.C. § 1915A Montgomery's claim seeking to bar her transfer from FMC Carswell to FCC Terre Haute); *Montgomery v. Rosen*, 20-cv-



Appellate Case: 21-1074 Page: 9 Date Filed: 01/12/2021 Entry ID: 4993271

3261, 2020 WL 7695994 (D.D.C. Dec. 24, 2020) (granting Montgomery motion for partial summary judgment on APA regulatory claim), *summarily reversed*, 2021 WL 22316 (D.C. Cir. Jan 1, 2021), *reh'g & reh'g en banc denied*, 20-5379 (D.C. Cir. Jan. 5, 2020); *Montgomery v. Rosen*, 20-cv-3261, 2021 WL 75754 (D.D.C. Jan. 8, 2021) (granting government motion for partial summary judgment on APA FDPA claim). That is precisely the sort of "'piecemeal litigation' and dilatory tactics" that this Court has previously suggested "is sufficient by itself to deny a stay." *McGehee*, 854 F.3d at 491. It should do so again here.

Montgomery offers no explanation for her unjustifiable delay, and none exists. The district court in the District of Columbia raised this issue to Montgomery's counsel more than a month ago and has twice suggested in writing and repeatedly suggested in argument that the sentencing court's judgment poses a concern. *See Montgomery v. Rosen*, 20-cv-3261, 2020 WL 7695994, at *6 n.3 (D.D.C. Dec. 24, 2020); *id.*, 2021 WL 75754, at *14 & n.6 (D.D.C. Jan. 8, 2021); *id.* Dkt. 40 at 20:2-7 (Dec. 10, 2020), Dkt. 39 at 5:2-22 (Dec. 11, 2020), Dkt. 53 at 12:5-13:3, 13:17-23, 37:10-

40:13 (Dec. 23, 2020); Hrg. Tr. at 13:1-16:2 (Jan. 7, 2021).[3] Only four days ago, Montgomery's counsel told the D.C. Court: "Your Honor, we haven't made that argument. We didn't add it to this proceeding after Your Honor raised that very interesting point in our last conversation. So we are simply not pressing that point at all." *Id.* Hrg. Tr. at 13:19-24.

Montgomery's gamesmanship also militates against relief. While claiming in her motion that a stay of her execution is currently in place (Mot. at 11), she has simultaneously claimed in the Supreme Court and the D.C. Circuit that she will suffer irreparable harm unless she is granted a stay. *See*, *e.g.*, Appl. for Stay at 24, *Montgomery v.* Rosen, No. 20A121 (U.S. Jan. 9, 2021) ("Absent a stay, Mrs. Montgomery will be unlawfully executed.") Montgomery has failed to disclose her position about the purported "stay" in those other cases, just has she fails to disclose to this Court her inconsistent motions for stays in those courts. These inconsistent positions, taken on the eve of her execution,

---

[3]"Hrg. Tr." refer to the transcript of a hearing held before the United States District Court for the District of Columbia in *Montgomery v. Rosen*, 20-cv-3261 (D.D.C.), on January 7, 2021. The transcript is not yet available on the Court's public docket, but the Government can provide it to this Court if needed.

underscore Montgomery's efforts to sandbag the government and the courts in an attempt to evade her lawful death sentence.

It has been sixteen years since Montgomery viciously murdered Bobbie Jo Stinnett and more than twelve years since the district court entered the judgment challenged today. She has chosen to litigate other issues instead of this one, and now it is too late. This Court should deny her motion.

### *B. Montgomery Has Not Shown a Substantial Likelihood of Success on the Merits*

A prisoner seeking a stay of execution must show "a significant possibility of success on the merits." *Hill*, 547 U.S. at 584; *see Nelson*, 541 U.S. at 649; *Lee*, 140 S. Ct. at 2591 (setting aside Eighth Amendment claim because, among other reasons, "plaintiffs have not established that they are likely to succeed on the merits"). Indeed, the Supreme Court has summarily set aside lower-court orders that "enjoined [an] execution without finding that [the prisoner] has a significant possibility of success on the merits." *Dunn v. McNabb*, 138 S. Ct. 369, 369 (2017).

The district court's judgment ordered that the Attorney General shall set the time of execution, "provided that the time shall not be sooner than 60 days nor later than 90 days after the date of the judgment," but

that, if an appeal was taken, execution of the judgment would be "stayed pending further order of this Court upon receipt of the Mandate of the Court of Appeal." (DCD 402.) As the district court has confirmed, the stay terminated when the district court issued a further order denying Montgomery's § 2255 motion (DCD 451), after that court had received this Court's mandate from Montgomery's direct appeal. And in so doing, the district court eliminated any barrier posed by the judgment on its execution. Montgomery's contrary contentions are unpersuasive. (DCD 451.)

### 1. The Automatic Stay Lifted When the District Court Denied Montgomery's 2255 Petition

The district court unambiguously stated that "in the Court's view, the stay lifted when it denied her 2255 motion," adding that "[t]he Court had no intention to limit execution of the judgment beyond exhaustion of appeals." (DCD 451.) This Court defers "to the [d]istrict [c]ourt's construction of its own order." *Brachtel v. Apfel,* 132 F.3d 417, 420 (8th Cir.1997); *see also Steahr v. Apfel,* 151 F.3d 1124, 1126 (8th Cir.1998) ("[W]e will defer to the district court's interpretation of its own remand order."). *Hartis v. Chicago Title Ins. Co.,* 694 F.3d 935 (8th Cir. 2012); *Flavr Corp. of America v. Kemin Industries*, 493 F.2d 275, 283 n. 14 (8th

Cir. 1973) ("The trial court has considerable discretion in construing its own orders."). The district court's clarification that the stay was no longer in place defeats Montgomery's self-serving reading of the text.

Especially in light of that deference, Montgomery's strained reading of the judgment cannot support a last-minute stay. The stay in the judgment plainly was intended to permit Montgomery to seek the appellate review to which she was entitled. *See* 18 U.S.C. § 3596(a); Fed. R. Crim. P. 38(a); *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996). This Court returned its mandate on Montgomery's direct appeal on June 22, 2011. (D.E. 427.) Montgomery moved to vacate her sentence under 28 U.S.C. § 2255, and the district court denied her motion and a COA on March 3, 2017. (DCD 212.) At that point, proceedings in the district court on Montgomery's conviction and sentence concluded. The denial of Montgomery's § 2255 motion was the "order of this Court" that followed receipt of the mandate and lifted the stay.

In Montgomery's contrary view, her judgment automatically imposed an indefinite stay upon her appeal. (Mot. at 13.) Her judgement, however, could not have imposed such a stay because the court did not make the necessary findings for such relief. *See Donovan v. McNabb*, 138

S. Ct. 369, 369 (2017) (vacating stay of execution because the district court did not find that the inmate had "satisf[ied] all of the requirements for a stay, including a showing of a significant possibility of success on the merits"); *Nken v. Holder*, 556 U.S. 418, 434 (2009) (stay factors). Montgomery provides no support for her claim that a court could, without findings, impose a delay that remains in place until it decides to the contrary. No such stay would be lawful, and no such stay was imposed.

Moreover, the court's and Government's understanding conforms with how the court has addressed Montgomery's execution. The Government provided notice of both Montgomery's original and rescheduled executions dates, and the court has never expressed any concern of its intentions. While Montgomery strains to paint the court's understanding of its own judgment as post hoc (Mot. at 14), in fact the court has appropriately acted consistent with its clarification that it "had no intention" to limit how its judgment would be executed after Montgomery exhausted her appeals. (DCD 451.) And again, the court's understanding reflects Montgomery's own understanding, as revealed by her failure to raise this claim at any point until 48 hours before her execution, even when prodded to do so by the D.C. district court

Contrary to Montgomery's contentions (Mot. at 2, 14), the Government never requested the court to amend its judgment and the court did not do so. The Government's notice informed the district court about the discussion of its judgment by the District Court for the District of Columbia, but stated clearly that "the Government d[id] not believe that any action is necessary or warranted from the Court at this time[, a]nd no further action is requested." (DCD 446.) The district court apparently agreed, and took further action only in denying Montgomery's later-filed motion. (DCD 451.) The court's judgment remains unchanged.

Courts that have reviewed similar last-minute challenges based on long-expired stays in years-old judgments have reached the same conclusions. For example, Western District of Texas interpreted a judgment containing language similar to what Montgomery puts at issue here and refused to vacate an execution date. Order on Motion for Injunctive Relief (Dkt. 690), *United States v. Vialva*, 6:99-cr-070 (W.D. Tex. Sept. 11, 2020). The court concluded that its judgment did not limit the Attorney General's authority to set an execution date after the inmate exhausted his appeals. "When read in context with the entire judgment," the Court wrote, "it is clear the second paragraph was intended to limit



Appellate Case: 21-1074 Page: 16 Date Filed: 01/12/2021 Entry ID: 4993271

only the Attorney General's authority to set an execution date before Vialva had a chance to exhaust his appeals. There is no indication that a stay of execution—or the limitations placed on the Attorney General's authority to set an execution date—was meant to apply after Vialva had exhausted his appeals." *Id.*; *cf.* Order (Dkt. 1425), *United States v. Lee*, 97-cr-243 (E.D. Ark. July 10, 2020) (finding that Attorney General retained authority to schedule execution dates despite the judgment not expressly ordering it to do so).

Montgomery's argument that the court's reading of its own order would have allowed the Government to execute her "*while she was actively litigating her § 2255 motion on appeal*" (Mot. at 2), simply ignores the law. Both the FDPA and the Supreme Court's decision in *Lonchar* require exhaustion of Montgomery's motion under 28 U.S.C. § 2255, which occurred when the Supreme Court refused to grant cert on the Supreme Court denied her petition for a writ of certiorari on the denial of her certificate of appealability. Order, *Montgomery v. United States*, No. 17-1716 (8th Cir. Jan. 25. 2019), *cert. denied*, 140 S. Ct. 2820 (May 26, 2020).

### 2. The Judgment Imposes No Time Constraints On Execution After The Stay Lifted

Tacitly acknowledging that the district court's denying her motion defeats her claim that a stay remains in play, in her present motion, Montgomery now principally relies on her contention that the judgment's original mandate that her execution "not be sooner than 60 days nor later than 90 days after the date of the judgment," somehow now controls. (Mot. at 8-12.) But the district court rejected that reading of its order as well, explaining that it "had no intention to limit execution of the judgment beyond exhaustion of appeals." (DCD 451.) That reading too deserves deference, and defeats Montgomery's claim.

As with the automatic stay itself, the judgment's original timing provision merely provided Montgomery sufficient time to file an appeal, which she did the next day. (DCD 402, 403.) At that point, the automatic stay took effect and her execution could not possibly have taken place within 90 days of the "date of the judgment." (D.E. 402.) The court, however, did not impose a similar timeframe for the execution after the stay lifted with the denial of the 2255 motion. Nothing in the judgment purported to prohibit the Government from ever executing the judgment if it did not comply with the initial 90-day deadline, particularly if the

Government's failure to do so was based on the automatic stay imposed by the judgment itself. *Cf. Dolan v. United States*, 560 U.S. 605, 611 (2010) (explaining that where "a statute 'does not specify a consequence for noncompliance with' its 'timing provisions,' 'federal courts will not in the ordinary course impose their own coercive sanction'").

The 60- to 90-day provision is an artifact from model sentencing language used under 21 U.S.C. § 848, which was repealed in 2006. *See* Admin. Office of the U.S. Courts, *The Presentence Investigation Report (Publication 107)*, Appx. F at 12 (rev. Mar. 2006). As the commentary to the model language explains, "[t]he 61-day delay [was] intended to allow for an appeal to be filed," whereas "[t]he 90-day maximum period [was] suggested to provide a reasonable period within which the sentence can be carried out." It would not be possible to "carr[y] out" the sentence within 90 days if the defendant appealed, however, and thus the model language provided for a stay of the "execution of the judgment" "[i]f an appeal is taken from the conviction and sentence." That provision simply recognizes that an appeal would freeze the execution until an inmate exhausted under § 3596(a), at which point there would be no time limits linked to the date of the judgment.

Montgomery claims "[t]he only sensible way to read the Judgment is that the Government has 90 days to set the date once the Judgment becomes effective, *i.e.*, when the stay is lifted—not when the 2008 Judgment was entered." (Mot. at 11.) But that is simply not what it says. Absent an appeal, the judgment required the execution to be held within 60-90 days of "the date of the judgment." The only "sensible way" to read that phrase is April 4, 2008. Not even Montgomery argues that the time limitation could apply after she took an appeal. As the district court reasonably explained, it never did.

## III. Conclusion

For the reasons stated above, the United States respectfully requests that this Court deny Montgomery's motion for a stay.

Respectfully submitted,

TIMOTHY A. GARRISON
United States Attorney

By */s/ Brian P. Casey*

BRIAN P. CASEY
ALAN T. SIMPSON
J. BENTON HURST
DAVID WAGNER
Assistant United States Attorneys

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

*Attorneys for Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Fed. R. App. P. 32(g), that this reply complies with the type-volume limitations in Fed. R. App. P. 27(d) and contains 3,939 words. This reply was prepared using Microsoft Word 2016 software. In making this certification I have relied upon the word-count feature of Microsoft Word 2016. Furthermore, this reply has been determined to be virus-free in compliance with Eighth Circuit Rule 28A(h).

/s/ *Brian P. Casey*
Brian P. Casey
Assistant United States Attorney



Appellate Case: 21-1074 Page: 22 Date Filed: 01/12/2021 Entry ID: 4993271

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2021, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

/s/ *Brian P. Casey*
Brian P. Casey
Assistant United States Attorney



Appellate Case: 21-1074 Page: 23 Date Filed: 01/12/2021 Entry ID: 4993271